casionally involve intricate questions of law, and the court may deem it wise and prudent to retain the execution of the writ in court, and, as the simpler method of drawing a jury is from those in attendance, that course may be adopted. This solution does not imply any departure from the substance of the writ, which is the ascertainment of damages by a jury, with a view to the speedy disposition of the action.

It is suggested that, inasmuch as the Code of Civil Procedure (section 1215) vests the court with authority to direct the return of the inquisition to it, the conclusion follows that the execution of the writ must be had by a jury selected by the sheriff, and the inquiry must be before him presiding. This deduction does not necessarily follow. If the inquisition is not to be executed in court, that direction may be made. In fact, the existence of this authority emphasizes the suggestion that the court or judge retains the control of the proceeding, and the inquisition is merely the means to aid in the final disposition of the subject-matter committed to the jury, which is the ascertainment of damages on default. It would seem to be the more wholesome rule to leave the manner of executing the writ, within the lines suggested, to the discretion of the court. In cases easy of solution, the sheriff, with his jury, may be safely trusted with their determination. In a case where troublesome questions of law are likely to arise, the court, in the exercise of its judgment, should be permitted to conduct the inquiry itself with jurors taken from the regular panel.

Actions for personal injuries are numerous, and are not decreasing. Often there is no defense to the action, but the parties are unable to agree upon the sum with which the defendant is to be charged. If each side can be assured that the inquiry to ascertain the damages may be heard in court, if it so directs, the expense and delay of a trial may occasionally be avoided. Upon the present application affidavits were presented to the court, and sufficient appeared to warrant the court in exercising its discretion in the manner it did. Our conclusion is that the order should be affirmed, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements. All concur, except WILLIAMS, J., who dissents.

---

(92 App. Div. 584.)

STROUGH et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. CARRIERS—DUTY TO FURNISH CARS—UNREASONABLE NEGLECT—QUESTION FOR JURY.

Whether a carrier unreasonably neglected to provide a sufficient number of cars to forward plaintiff's freight was a question for the jury.

2. SAME—PERISHABLE MERCHANDISE—DUTY TO MOVE.

Hay not being perishable merchandise, a carrier is not called upon to put forth unusual efforts to remove the same when delivered to it for transportation.

3. SAME—DUTY TO CARRIER—DEGREE OF DILIGENCE—DISCRIMINATION.

A carrier owes the duty of exercising reasonable diligence to furnish cars adequate for the transportation of freight, but not to discriminate in favor of an individual shipper, where the demands exceed its capacity and the anticipated calls upon it.

4. SAME—INCREASED RATES—FAILURE TO PUBLISH—RECOVERY BY SHIPPER.
    A shipper cannot recover back increased freight charges voluntarily paid, although the carrier did not give the 10-days notice of the increase required by the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104 § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3157]).

5. SAME—QUESTIONS FOR JURY—EVIDENCE.
    In an action by a shipper to recover overcharges from a carrier, the court properly refused to submit to the jury the issue of reasonableness of the increased rate paid by the shipper, where there was no proof of its unreasonableness, and the shipper voluntarily paid the same, thereby implying its reasonableness.

6. SAME—DISCRIMINATION—INCREASED RATES.
    A discrimination excepting a shipper from a general increase of freight tariff is against public policy.

7. SAME—INCREASED RATES—PROSPECTIVE SHIPPERS.
    The fact that a shipper had on hand a large quantity of merchandise, which he intended to transport by a common carrier, or the fact that he had previously endeavored to obtain the cars to ship the same, did not relieve him from a reasonable increase in the freight rate, made while the goods were in his custody for future transportation.

Appeal from Trial Term, Jefferson County.

Action by Byron J. Strough and another against the New York Central & Hudson River Railroad Company. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Wayland F. Ford, for appellants.
Henry Purcell, for respondent.

SPRING, J.   The plaintiffs were dealers in hay, living at Lafargeville, in the county of Jefferson.   In the summer and fall of 1899 they purchased of the farmers living near the several local stations along the defendant's line a large quantity of hay, designed to be shipped to New York and Boston.   The hay was pressed by the plaintiffs and stored in barns near the defendant's railroad, except such part as was shipped as it was drawn in by the farmers.   Before purchasing the hay the plaintiffs made inquiries of the local station agents of the defendant, and also of its division freight agent, to ascertain if there was to be any increase in the tariff charge for the shipment of hay, and was informed by each of said agents that there was to be no increase so far as such agent knew.   During the year 1899, and for some time prior thereto, hay had been classified in what was known as the sixth class of merchandise.   The charge on this class of freight from Jefferson county to New York and Boston was 17 cents per hundred.   From the 1st of September to the 1st of January the plaintiffs shipped over defendant's line quite a large quantity of this hay, but were unable to procure sufficient cars to transport all they had on hand for shipment. They made demands daily of the various local agents for more cars, but were unable to procure them.   One of the causes of action contained in the plaintiffs' complaint is that the defendant unreasonably neglected to provide a sufficient number of cars to forward this freight. That question was properly submitted to the jury (Root v. L. I. R. R.

Co., 114 N. Y. 300, 21 N. E. 403, 4 L. R. A. 331, 11 Am. St. Rep. 643), and their verdict determines that the defendant was not unreasonable in its failure to provide sufficient cars. The defendant's general traffic manager testified that during the fall of 1899 there was an unusual and extraordinary call for freight cars, and especially for the transportation of perishable goods, and apparently preference was given to the shipment of goods of that character. The defendant was not apprised of any urgent necessity for the shipment of this hay. It was not within the class denominated perishable merchandise, and its sale in midwinter might as readily be made as earlier in the season. It was not, therefore, called upon to put forth any unusual efforts to remove the hay. The ordinary duty of exercising reasonable care and diligence as a common carrier to furnish cars adequate for the transportation of freight was incumbent upon it, but not to discriminate in favor of the plaintiffs where the demands exceeded the capacity of the defendant and the anticipated or usual calls upon it. So, under the evidence, it was a fair question of fact whether there was any unreasonable neglect on the part of the defendant to furnish the plaintiffs with the cars which they needed. On the 1st of January hay was placed in the fifth class of merchandise, involving an increase in the freight rate to Boston of 80 cents on a ton, and to New York of 60 cents. The claim of the plaintiff is that after this increase in the tariff rate they shipped to Boston 132 car loads of hay and to New York 11 car loads, each containing about 10 tons. The plaintiffs paid the increased freight charge, amounting, as they claim, to $1,194.45, and they seek to recover this excessive rate. It is further claimed that the price of hay in these cities decreased $1 a ton after the 1st of January, but the cause of action founded upon that claim was abandoned on the trial.

The interstate commerce act (Act Cong. Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3157]) provides that before any advance is made in freight charges a public notice thereof of 10 days shall be given, stating the changes to be made, and the date when the increased rate is to go into effect. The notice in this case was posted at the station of the defendant at Lafargeville on the 25th day of December, and the new tariff charge became operative on January 1st following. The requisite 10 days' notice was not, therefore, given. The plaintiffs knew of this notice when it was first posted, and continued to ship their hay, paying the increased rate without a murmur, until all had been shipped. It does not appear that any part of the same was loaded in the first few days of January, so that the plaintiffs, we may say, did have the full 10-days notice before they delivered their hay to the defendant. Nor did they make any complaint in any way of the increased charge the defendant had imposed. They paid the money voluntarily, and they cannot now recover it back. Vanderbeck v. City of Rochester, 122 N. Y. 285, 25 N. E. 408; Newburgh Savings Bank v. Town of Woodbury, 173 N. Y. 55, 65 N. E. 858; Killmer v. N. Y. C. & H. R. R. Co., 100 N. Y. 395–401, 3 N. E. 293, 53 Am. Rep. 194; Bennett v. Bates, 94 N. Y. 354–373. We think it was no error for the court to decline to permit the jury to pass upon the question as to whether this increased rate was unreasonable or not. There was no proof given on the part of the plaintiffs to sustain that

charge, and their voluntary assent to it implies that the rate was reasonable. Again, there was no implied agreement whereby the plaintiffs were entitled to ship the hay at the old rate. A discrimination of that kind excepting the plaintiffs from the general freight tariff would be against public policy, and simply because a man has on hand a large quantity of merchandise which he intends to have transported by a common carrier does not relieve him from any reasonable increase in the freight charge which may be made while the goods are in his custody for future transportation. The fact that they endeavored to obtain the cars to ship the goods before the increased rate became operative does not change this rule, as the jury have found that the defendant did not neglect improperly to perform its duty in furnishing cars.

The other cause of action is upon an assigned claim made by one Tallman, who was also a hay shipper living at Lafargeville. The facts pertaining to that cause of action are also identical with plaintiffs' own claim.

The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.